COMMONWEALTH of Pennsylvania, Appellant

v.

Nolan ANTOSZYK, Appellee.

Superior Court of Pennsylvania.

Submitted Nov. 10, 2009.

Filed Dec. 2, 2009.

---

Timothy J. Lyon, Asst. Dist. Atty., Pittsburgh, for Commonwealth, appellant.

Paul D. Boas, Pittsburgh, for appellee.

BEFORE: BOWES, FREEDBERG, and FITZGERALD,* JJ.

## OPINION BY FITZGERALD, J.:

¶ 1 The Commonwealth of Pennsylvania appeals from the order entered in the Allegheny County Court of Common Pleas, which granted the suppression motion filed by Appellee, Nolan Antoszyk. The Commonwealth contends an affidavit that includes material misstatements from a confidential informant should not render inadmissible evidence obtained from a warrant approved on the basis of the faulty affidavit. Because the good-faith exception to the exclusionary rule does not apply in Pennsylvania, we hold that the trial court properly suppressed the evidence obtained solely through the deliberate misstatements the informant admittedly made to the affiant. In so holding, we conclude that this Court's decision in *Commonwealth v. Bradshaw*, 290 Pa.Super. 162, 434 A.2d 181 (1981), was abrogated by the Pennsylvania Supreme Court's decision in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), and we adopt the lead opinion from this Court's decision in *Commonwealth v. Clark*, 412 Pa.Super. 92, 602 A.2d 1323 (1992) (plurality). Accordingly, we affirm.

¶ 2 The facts of this case are largely undisputed. In late April and early May of 2005, Detective D.P. Schultz spoke a number of times with a then-confidential informant ("CI"), who had previously provided the police with reliable information leading to the arrest of two suspected drug dealers. Regarding the instant case, the CI informed Detective Schultz that he observed Appellee with large quantities of marijuana in his house. The CI also indicated that Appellee was a bulk dealer of marijuana who also owned firearms. Detective Schultz accordingly prepared an affidavit of probable cause for a search warrant, which stated in pertinent part:

For the past couple of weeks your affiant has been working with a Confidential Reliable Informant on a drug dealer from Richland Twp. Area of Allegheny County, by the name of Nolan Antoszyk "Nolan". The Confidential Reliable Informant shall and will remain anonymous out of fear for his/her life and hereinafter shall only be referred to as "BUNNY". [ ]"BUNNY" states that Nolan Antoszyk has been dealing multiple pounds of marijuana from his residence at 5939 Heckert Road[,] Bakerstown[,] Pa. 15007, and has been doing so for some time now. "BUNNY" states that Nolan sells only by bulk quantities (pounds) and that he only deals with a select crowd. "BUNNY" states that Nolan has no legitimate job and his only means of income are from drug dealing. "BUNNY" states that business is real good [be]cause Nolan pays all the bills for the house in which his mother also resides. "BUNNY" stated that Nolan's father had recently deceased. "BUNNY" states that Nolan is real cocky and brags allot [sic] about his business and money. "BUNNY" states that Nolan carrys [sic] a 45 pistol all the time[ ]

---

* Former Justice specially assigned to the Superior Court.

when he is riding around making drug deals in his [ ] 1998 Chevy Blazer Black and silver.... He/She states that its [sic] all part of Nolan's cocky personality. "BUNNY" says that he/she had been at Nolan[']s residence in the past on many occassions [sic] and viewed him to be in possession of pound quantities of marijuana all of which were for sales.... "BUNNY" states that Nolan had been arrested for drugs in the past but nothing ever came of it. [A] check of Nolan's record indicates three prior drug arrests[,] one of which he [received] probation and the others were Nolle Prossed or withdrawn. "BUNNY" [ ] knows [ ] the substance he/she is describing to me to be that of Marijuana, having been in and around the drug sub-culture for most of his/her life and remaining thereafter.

\*        \*        \*

On 3-3-05 your affiant was once again contacted by "BUNNY", [ ] who stated Nolan was loaded up with Marijuana. "BUNNY" stated that he/she would get back to me as soon as he/she got more information. "BUNNY" stated that we should have to hit him pretty quick because Nolan has been known to move his supply very fast.

On 3-7-05 in the early morning hours your affiant recieved [sic] updated information from [ ] "BUNNY" [ ] who stated that within the past 48 hours he/she was at the residence of Nolan Antoszyk, at 5939 Heckert Road[,] Bakerstown[,] Pa. 15007, [ ] and while there, did observe Nolan to be in possession of a quantity of marijuana all of which were for sales. "BUNNY" stated that when he/she left the residence, [ ] the bulk of the Marijuana remained therein.

"BUNNY" has given information in the past which has proven to be true and correct information, information which has led to the arrest and conviction of C. Alverez in 2003 and the siezure [sic] of 1 1/2 pounds of cocaine in 2002. "BUNNY" also led to the arrest and conviction of Suspect "A" in 2003[,] but his identity can not be disclosed for the safety of the C.I. Based on your affiant[']s 7+ [ ] years['] Narcotics experience and 13+ [ ] years as a Police Officer and, the past reliability of "BUNNY" [ ] and his/her coroberation [sic] with what he/she had described to your affiant, I respectfully request that a search warrant be issued for the afforementioned [sic] address and vehicle listed on page 1 of this application.

Aff. of Probable Cause, dated 3/7/05.

¶ 3 Based on the affidavit, the police obtained a search warrant for Appellee's home. The police recovered over ten pounds of marijuana as a result of the search. Appellee was subsequently charged with delivery and possession crimes.

¶ 4 At the suppression-motion hearing, the CI testified that he provided false information to the police. The CI admitted that he had not been in Appellee's house for at least six weeks prior to speaking with Detective Schultz. The CI indicated that while he had seen Appellee with marijuana for personal use, his knowledge of any dealing by Appellee was based on rumors. The CI conceded, however, that the detective's affidavit properly reflected what he told the detective. The C.I. claimed that he lied to the police in order to stop Appellee from bothering him about a three-year-old drug debt the C.I. owed to Appellee.

¶ 5 Based on the CI's testimony, the trial court granted Appellee's motion to suppress the evidence obtained from the search. The Commonwealth followed with

this timely appeal.[1] The Commonwealth filed a timely Pa.R.A.P. 1925(b) statement. Although the trial court did not file a responsive Rule 1925(a) opinion, it filed an opinion in support of its order granting Appellee's suppression motion, which we hereinafter refer to as "Trial Ct. Op."

¶ 6 The Commonwealth raises the following issue on appeal:

Whether the suppression court erred in granting Appellee's Omnibus Pre–Trial Motion seeking the suppression of physical evidence where

(a) the affidavit of probable cause contained, within its four corners, sufficient probable cause to justify the issuing of a search warrant;

(b) the evidence of record failed to establish that the affiant to the warrant made a deliberate, knowing, or reckless misstatement regarding a material fact;

(c) the court improperly found grounds for suppression in a plurality decision of this Court, which represented an incorrect analysis and disposition of the issue involved; and

(d) suppression was not the proper remedy when a facially valid search warrant was issued and the affidavit of probable cause included statements from a confidential informant that the affiant believed to be true and had no reason to doubt even though those statements were later shown to be false?

Commonwealth's Brief at 4.

¶ 7 The Commonwealth argues that the trial court erred in relying on this Court's decision in *Clark, supra.* The Commonwealth avers that *Clark* "was a poorly reasoned, non-precedential, plurality opinion." Commonwealth's Brief at 10. The Commonwealth contends that, instead, this

Court's decision in *Bradshaw, supra,* was binding on the trial court. The Commonwealth further submits that "the Pennsylvania Constitution provides no greater protections than its federal counterpart...." Commonwealth's Brief at 14. The Commonwealth concludes that an informant's false averments in an affidavit of probable cause does not warrant suppression of evidence obtained as a result of those averments under the Pennsylvania Constitution. We disagree.

¶ 8 Our standard of review is well-established:

In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where the Commonwealth appeals the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible.

*Commonwealth v. Howard,* 762 A.2d 360, 361 (Pa.Super.2000) (citations omitted). However, "our standard of review when considering [ ] constitutional challenges is plenary, as these challenges involve pure questions of law." *Commonwealth v. Leddington,* 908 A.2d 328, 331 (Pa.Super.2006).

¶ 9 The parties do not dispute that under a federal constitutional analysis, the informant's admission to making false averments would not warrant suppression.

---

1. The Commonwealth has certified that the suppression order substantially handicaps its prosecution. *See* Pa.R.A.P. 311(d).

The instant issue, however, also implicates Article I, Section 8 of the Pennsylvania Constitution. The focus of the Commonwealth's claim is its assertion that the Pennsylvania Constitution does not offer any greater protection than the United States Constitution for claims involving false affidavits, relying on this Court's decision in *Bradshaw*.

¶ 10 Article I, Section 8 of the Pennsylvania Constitution states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed by the affiant.

Pa. Const. art. 1, § 8. "Although the wording of [Article I, Section 8 of] the Pennsylvania Constitution is similar in language to the Fourth Amendment of the United States Constitution, we are not bound to interpret the two provisions as if they were mirror images, even where the text is similar or identical." *Edmunds*, 526 Pa. at 391, 586 A.2d at 895–96. "Depending upon the particular issue presented, an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority, but as one form of guidance" *Id.* at 390–91, 586 A.2d at 895.

¶ 11 In *Bradshaw*, decided in 1981, this Court addressed the issue of "whether the criminal defendant's [F]ourth [A]mendment rights were violated because the police officer's affidavit was based on a deliberate misrepresentation by the informant." *Id.* at 182. The *Bradshaw* Court deter-

mined that the Fourth Amendment to the United States Constitution does not require the suppression of evidence obtained as a result of an affidavit in which a confidential informant deliberately provided false information to the affiant. *Id.* at 183. The *Bradshaw* Court echoed the federal standard, in that it focused on whether "the affiant has a reasonable belief in the truthfulness of the information contained in the affidavit," *id.*, and whether "[s]uch challenges [to good faith errors] would have [any] potential deterrence on unreasonable police behavior...." *Id.* At the end of the opinion, the *Bradshaw* Court added that it found "no logical or convincing arguments for extending veracity challenges to informants under the Pennsylvania Constitution." *Id.*[2]

¶ 12 Pennsylvania jurisprudence, however, on issues implicating the Pennsylvania Constitution, and particularly those involving the interplay between the Pennsylvania and United States Constitutions, changed significantly with the Pennsylvania Supreme Court's decision in *Edmunds*, *supra*. In 1991, ten years after this Court's decision in *Bradshaw*, the *Edmunds* Court held that Article I, Section 8 of the Pennsylvania Constitution does not incorporate a good-faith exception into the exclusionary rule. *Edmunds*, 526 Pa. at 376, 586 A.2d at 888. In so holding, the *Edmunds* Court stated:

> [G]iven the strong right of privacy which inheres in Article 1, Section 8, as well as the clear prohibition against the issuance of warrants without probable cause, or based upon defective warrants, the good faith exception to the exclusionary rule would directly clash with those rights of citizens as developed in

---

**2.** Appellee contends that this portion of the *Bradshaw* decision is *dictum*. However, while this discussion does not elaborate further on the Pennsylvania constitutional issue, the decision gives no indication that the Court intended to limit its decision to a federal constitutional analysis.

our Commonwealth over the past 200 years. *Id.* at 402, 586 A.2d at 901. The *Edmunds* Court stated that "the purpose underlying the exclusionary rule in this Commonwealth is quite distinct from the purpose underlying the exclusionary rule under the 4th Amendment." *Id.* at 394, 586 A.2d at 897. Specifically referencing the United States Supreme Court's commentary on Pennsylvania's application of the exclusionary rule, the *Edmunds* Court stated:

> [W]e disagree with the [United States Supreme] Court's suggestion in [*United States v.*] *Leon* [468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984),] that we in Pennsylvania have been employing the exclusionary rule all these years to deter police corruption. We flatly reject this notion. We have no reason to believe that police officers or district justices in the Commonwealth of Pennsylvania do not engage in "good faith" in carrying out their duties. What is significant, however, is that **our Constitution has historically been interpreted to incorporate a strong right of privacy,** and an equally strong adherence to the requirement of probable cause under Article 1, Section 8. Citizens in this Commonwealth possess such rights, **even where a police officer in "good faith" carrying out his or her duties inadvertently invades the privacy** or circumvents the strictures of probable cause. To adopt a "good faith" exception to the exclusionary rule, we believe, would virtually emasculate those clear safeguards which have been carefully developed under the Pennsylvania Constitution over the past 200 years.

*Id.* at 398–99, 586 A.2d at 899 (emphases added).

¶ 13 Further:

> The linch-pin that has been developed to determine whether it is appropriate to

issue a search warrant is the test of probable cause. It is designed to protect us from unwarranted and even vindictive incursions upon our privacy. It insulates from dictatorial and tyrannical rule by the state, and preserves the concept of democracy that assures the freedom of its citizens. This concept is second to none in its importance in delineating the dignity of the individual living in a free society.

*Id.* at 398, 586 A.2d at 899 (quoting *Commonwealth v. Miller,* 513 Pa. 118, 127, 518 A.2d 1187, 1191–92 (1986)) (citation omitted). In sum, the *Edmunds* Court stated in no uncertain terms that while the United States Constitution may focus on the perspective of the affiant or the issuer of the warrant in determining whether probable cause exists, the Pennsylvania Constitution zealously safeguards the privacy of individuals and thus does not contemplate a good-faith exception. *See id.* Accordingly, although the *Edmunds* Court did not address *Bradshaw* specifically, it emphatically disclaimed any consideration that Article I, Section 8 of the Pennsylvania Constitution adopts the federal standard of deterring police misconduct. *Compare with Bradshaw,* 434 A.2d at 183 ("Good faith errors like the instant police officer's belief in the informant's misstatement cannot be deterred. Such challenges, therefore, would have no potential deterrence on unreasonable police behavior. . . .").

¶ 14 Almost a year after the *Edmunds* decision, this Court decided *Clark, supra.* The facts of *Clark* were similar to the instant facts, *viz.,* a confidential informant knowingly gave false information to an affiant which was the basis for a search warrant. *Id.* at 1326. Judge Hoffman, in a plurality opinion, held that when a confidential informant lies about a fact that is essential to establishing probable cause,

the warrant is invalid. *Id.* at 1327. Although the Commonwealth argued, as it does here, that the good-faith exception as adopted by the *Bradshaw* Court should apply, Judge Hoffman found that *Bradshaw* was no longer valid:

> [The Commonwealth] argues that Pennsylvania law does not permit an attack on the veracity of the confidential informant[ ] because of the good faith exception to the exclusionary rule applied by this [C]ourt in [ ] *Bradshaw[ ]*. [The Commonwealth]'s reliance on *Bradshaw* is misplaced. Our Supreme Court has recently held that Article I, Section 8 of the Pennsylvania Constitution does not incorporate a good faith exception to the exclusionary rule. *Commonwealth v. Edmunds,* 526 Pa. 374, 383, 586 A.2d 887, 891–92 (1991). The court carefully examined the principles underlying the exclusionary rule, as well as the history of Article I, Section 8, and concluded that the rule's purpose was much broader than the analogous federal provision.

*Clark,* 602 A.2d at 1326–27; *see also id.* at 1326 n. 5 ("The *Bradshaw* court did not, however[,] invalidate the search warrant based on material misstatements because of the good faith exception to the exclusionary rule. This exception has since been rejected by our Supreme Court.").

¶ 15 As noted, Judge Hoffman, in *Clark,* authored the lead opinion of a plurality decision. Judge Popovich concurred in the result. Judge Cavanaugh filed a separate, concurring opinion, stating, "I agree with . . . the suppression court that as required by law, the police failed to undertake an independent investigation after receiving the statement from the confidential informant." *Id.* at 1328 (Cavanaugh, J., concurring). We are of course mindful that plurality decisions are not binding as precedent. *See, e.g., Commonwealth v. Grif-*

*fin,* 954 A.2d 648, 653 (Pa.Super.2008). At a minimum, however, the plurality opinion in *Clark* reflects the tenuous standing of this Court's holding in *Bradshaw.*

¶ 16 In 2003, this Court decided *Commonwealth v. Brown,* 836 A.2d 989 (Pa.Super.2003). The appellant in *Brown,* who was convicted of various drug offenses, claimed that the informant who supplied information leading to his arrest made material misstatements to the police. *Id.* at 992. The *Brown* Court cited *Clark* in addressing the appellant's claim that he was entitled to production of the confidential informant, stating, "[I]f a search warrant is based upon an affidavit containing deliberate or material misstatements, the search warrant is invalid." *Brown,* 836 A.2d at 992–93. Therefore, although the plurality opinion in *Clark* was not binding on this Court, a majority of the *Brown* Court cited it affirmatively, albeit in the context of determining whether production of a confidential informant was warranted.[3]

¶ 17 At a minimum, our Supreme Court's decision in *Edmunds,* and this Court's plurality decision in *Clark,* indicate Pennsylvania has trended toward adopting a rule that evidence obtained from an affidavit containing material misstatements by an informant must be suppressed. This Court's decision in *Brown* confirms that Judge Hoffman's lead opinion in *Clark* applies in the context of whether to compel production of a confidential informant.

¶ 18 As we have already noted, the Commonwealth's reliance on our pre*Edmunds* decision in *Bradshaw, supra,* is unavailing. The Commonwealth's post-*Edmunds* cases are similarly inapposite. *See* Commonwealth's Brief at 23 n. 16. In *Commonwealth v. Cameron,* 445 Pa.Super. 165, 664 A.2d 1364 (1995), this Court acknowledged

---

**3.** Judge Tamilia dissented without filing a separate opinion.

that a search warrant is invalid if the affidavit contains deliberate or knowing misstatements of material facts, citing *Clark*, but found that Cameron's warrant was not invalid because either the alleged misstatements were not deliberate or they were not essential to a finding of probable cause. *See id.* at 1367–68.

¶ 19 In *Commonwealth v. Murphy*, 795 A.2d 997 (Pa.Super.2002), this Court again cited *Clark* for the proposition that a deliberate or knowing misstatement of fact in an affidavit may render the search warrant invalid. *Id.* at 1006. The *Murphy* Court nonetheless found the search warrant valid, but only because in determining whether to believe the sergeant's averments in the affidavit regarding a witness's statements, or the witness's denial of those statements at the suppression hearing, the trial court was permitted to make that factual finding. *Id.* As a result, the *Murphy* Court did not reject *Clark* in upholding the warrant; rather, the Court upheld the warrant because the record supported the trial court's credibility finding. *See id.* at 1006–07.

¶ 20 In *Commonwealth v. Ryerson*, 817 A.2d 510 (Pa.Super.2003), this Court did not disavow *Clark* or *Murphy*. Instead, this Court found that Ryerson was not alleging a material misstatement of fact in the affidavit, but rather the omission of certain facts. *Id.* at 514. Accordingly, this Court found *Clark* and *Murphy* inapposite, and Ryerson's argument about material misstatements unavailing.

¶ 21 The Commonwealth also cites *Brown, supra*, which we have already determined lends support to *Clark*'s viability. Finally, in *Commonwealth v. Jones*, 942 A.2d 903 (Pa.Super.2008), this Court observed in a footnote that "no [evidentiary] hearing would be required if the [trial] court could determine that the warrant was still valid despite the alleged misstatements." *Id.* at 906 n. 2.

¶ 22 Accordingly, it is well-settled that courts may uphold a warrant if an **independent** basis exists to support a finding of probable cause; however, these cases also provide that a court must invalidate a search warrant if the **sole** basis for finding probable cause is the material misstatements. *See Clark, supra; see also Ryerson, supra; Murphy, supra; Cameron, supra.* We thus hold that Judge Hoffman's lead opinion in *Clark, supra*, properly reflects the law regarding material misstatements in an affidavit of probable cause, and we reject the Commonwealth's assertion that we are limited by the federal caselaw interpreting the United States Constitution.[4] Accordingly, we conclude that, after *Edmunds*, our courts must analyze Section I, Article 8 issues not with the

4. We would be remiss if we did not acknowledge the United States Supreme Court's recent decision in *Herring v. United States*, — U.S. —, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). In *Herring*, the defendant was arrested based on a warrant that was recalled months earlier. *Id.* at —, 129 S.Ct. at 698, 172 L.Ed.2d at 502–03. A police official had failed to update the electronic database, causing the arresting officer to believe the defendant still had an outstanding warrant. *Id.* at —, 129 S.Ct. at 698, 172 L.Ed.2d at 502. In finding that suppression was improper, the *Herring* Court determined that the cost of abandoning the evidence was greater than the deterrent effect of excluding it. *Id.* at —, 129 S.Ct. at 700–01, 172 L.Ed.2d at 505. Specifically referencing the federal good-faith exception, the *Herring* Court concluded that "[t]he pertinent analysis of deterrence and culpability is objective...." *Id.* at —, 129 S.Ct. at 703, 172 L.Ed.2d at 507. As we have noted, however, Article I, Section 8 of the Pennsylvania Constitution does not focus on deterrence and culpability, but rather on protecting an individual's right to privacy. *See Edmunds, supra.* Accordingly, *Herring* does not implicate our analysis of the Pennsylvania Constitution.

purpose of deterring police misconduct, but on whether the misstatements in the affidavit resulted in a violation of the defendant's privacy rights.

¶ 23 At the heart of this issue is whether Article I, Section 8 of the Pennsylvania Constitution is intended to protect Appellee's right to privacy, or to deter police misconduct. It is undisputed that the United States Constitution focuses on the latter. *See United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ("The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim."). Our Supreme Court, however, stated in no uncertain terms that the Pennsylvania Constitution focuses on the individual's right to privacy:

> [T]he right to be free from unreasonable searches and seizures contained in Article I, Section 8 of the Pennsylvania Constitution is tied into the implicit right to privacy.

\*     \*     \*

Citizens in this Commonwealth possess such rights, even where a police officer in "good faith" carrying out his or her duties inadvertently invades the privacy or circumvents the strictures of probable cause.

*Edmunds,* 526 Pa. at 396–97, 399, 586 A.2d at 898, 899 (quoting *Commonwealth v. De-John,* 486 Pa. 32, 49, 403 A.2d 1283, 1291 (1979)). Our modern jurisdiction continues to reflect the *Edmunds* Court's rationale. *See, e.g., Commonwealth v. Arnold,* 932 A.2d 143, 148 (Pa.Super.2007) (finding trial court's opinion, that intrusion was justified based on officers' good-faith belief that they entered common area of apartment building, erroneous); *see also Brown, supra.* We recognize that modern jurisprudence has declined to expand on Pennsylvania's rejection of the good-faith exception. *See, e.g., Commonwealth v. Basking,* 970 A.2d 1181, 1194 (Pa.Super.2009) (concluding that issues involving good-faith exception are distinct from issues involving apparent-authority exception) (quoting *Commonwealth v. Hughes,* 575 Pa. 447, 463–64, 836 A.2d 893, 902–03 (2003) (plurality)). Nonetheless, the Commonwealth instantly seeks exactly the type of relief which the *Edmunds* Court, a plurality of this Court, and later a majority of this Court rejected. *See Edmunds, supra; Clark, supra; Brown, supra.*

¶ 24 We accordingly conclude that *Edmunds, Clark,* and *Brown* warrant suppression of the evidence in this case.[5] The

---

5. Moreover, we note in *Edmunds, supra,* our Supreme Court emphasized that, when raising a claim implicating the Pennsylvania Constitution,

> as a general rule it is important that litigants brief and analyze at least the following four factors:
> 1) text of the Pennsylvania constitutional provision;
> 2) history of the provision, including Pennsylvania case-law;
> 3) related case-law from other states;
> 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Edmunds,* 526 Pa. at 390, 586 A.2d at 895. The Commonwealth has not briefed and analyzed each of these factors.

Regardless, our analysis reveals that the *Edmunds* factors do not weigh in favor of the Commonwealth. We have determined that *Bradshaw* no longer applies, in light of the holdings in *Edmunds, Clark,* and *Brown,* all of which interpreted the text of Article I, Section 8. In regard to our sister states, our research reveals that many states have adopted the good-faith exception to the exclusionary rule. *See, e.g., State v. Coats,* 165 Ariz. 154, 797 P.2d 693, 697 (Ariz.Ct.App.1990) (holding that statutorily imposed good-faith exception was constitutional under Arizona Constitution); *People v. Goldston,* 470 Mich. 523, 682 N.W.2d 479, 489 (2004) (recognizing and ap-

CI admitted that he lied when he said he was at Appellee's house recently and witnessed bulk quantities of marijuana for sale there, although the affidavit accurately reflected what he told the detective. *Compare with Murphy, supra* (finding that credibility determination was required when affiant and witness disagreed about whether witness made statement cited in affidavit). The affidavit relies only on the CI's averments, citing no other independent source to verify the CI's observations other than a search of Appellee's prior criminal record. There can be no dispute, therefore, that the CI's deliberate misstatements were the sole basis for the finding of probable cause, and the Commonwealth does not assert otherwise. Accordingly, once the trial court determined that the CI was credible in testifying that he did not personally witness the drug activity at Appellee's home as stated in the affidavit of probable cause, the search warrant became invalid. *See Clark, supra.*

¶ 25 We therefore hold that *Bradshaw, supra,* has been overruled by *Edmunds, supra,* and *Clark, supra.* Article I, Section 8 of the Pennsylvania Constitution protects the citizens of this Commonwealth from material misstatements made deliberately or knowingly in an affidavit of probable cause.[6] The remedy for such a violation, if there is no other independent basis for a finding of probable cause, is invalidation of the search warrant. Accordingly, the trial court properly invalidated the warrant and suppressed the evidence obtained as a result of the warrant.

¶ 26 Order affirmed.

---

plying good-faith exception under Michigan Constitution); *State v. Ward,* 231 Wis.2d 723, 604 N.W.2d 517, 528 (2000) (recognizing and applying good-faith exception under Wisconsin Constitution). Many states, however, have not adopted the good faith exception. *See, e.g., State v. Marsala,* 216 Conn. 150, 579 A.2d 58, 59 (1990) (holding that good-faith exception does not exist under Connecticut law); *State v. Cline,* 617 N.W.2d 277, 293 (Iowa 2000) (holding that good-faith exception is incompatible with Iowa Constitution), *abrogated on other grounds, State v. Turner,* 630 N.W.2d 601, 606 n. 2 (Iowa 2001); *State v. Zanter,* 535 N.W.2d 624, 634 (Minn.1995) (holding that Minnesota does not recognize

good-faith exception). There is, therefore, no discernible trend as to how our sister states would approach this issue. Because we also find that Pennsylvania's recent jurisprudence emphasizes a policy of protecting the right to privacy rather than deterrence of police misconduct, we would not find an *Edmunds* analysis favorable to the Commonwealth.

6. We explicitly limit our holding, however, to cases in which the trial court has specifically found that the confidential informant's statements in a probable-cause affidavit are not credible.