J-S45022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| LORNE BRETT HOPKINS, JR. | |
| Appellee | No. 2074 MDA 2014 |

Appeal from the Order Entered on November 6, 2014
In the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0004536-2014

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 28, 2015**

The Commonwealth appeals the trial court's November 6, 2014 order granting Lorne Hopkins, Jr's motion to suppress evidence that was seized by police following the execution of a search warrant on Hopkins' residence. We affirm.

The trial court summarized the relevant factual history of this case as follows:

> Detective Anthony Fetrow was investigating a burglary that occurred at 1039 E. Philadelphia Street in the City of York. During that investigation, an individual by the name of Aaron Shifflet became a suspect because he lived next door to the victims.  On May 30, 2014, Detective Fetrow made contact with Mr. Shifflet.  The Affidavit of Probable Cause [attached to the search warrant application] states that Detective Fetrow observed "fresh healing cuts" on Mr. Shifflet's hands and arms.

---

[*]    Former Justice specially assigned to the Superior Court.

Mr. Shifflet was taken to the police station where he was [given his **Miranda**[1] warnings.] He subsequently waived his rights and agreed to speak with the detective.

Mr. Shifflet stated that he did commit the burglary, but that he was not alone. He stated that a person known to him as "Radio" was also present during the commission of the crime. According to Mr. Shifflet, the two men knocked on the victim's door several times to make sure they were not home. Using a rock to break the window, both men crawled through the broken glass to enter the residence, which resulted in both men being cut. Mr. Shifflet then stated he went back to his house to wash off the blood and that he then acted as a lookout while Radio rummaged through the belongings at 1039 E. Philadelphia Street. Radio emerged from the residence approximately 15 minutes later carrying a blue duffel bag. Mr. Shifflet told Detective Fetrow that Radio was supposed to give him money for helping commit the burglary, but Radio had yet to pay up.

Mr. Shifflet did not know Radio's real name, but he did provide police with a description. He was later able to pick [Hopkins] out of a photo lineup. Based on the information provided by Mr. Shifflet, Detective Fetrow applied for a search warrant for [Hopkins'] home located at 676 Chestnut Street. During a search of [Hopkins'] residence, Detective Fetrow was unable to find any of the items stolen from 1039 E. Philadelphia Street. However, officers did find [cocaine, marijuana, and a shotgun], which had no connection to the burglary. [Hopkins] was taken into custody on drug charges and agreed to speak with Detective Fetrow. At the suppression hearing, Detective Fetrow stated that he did not observe any cuts on [Hopkins'] hands or arms. Sometime after [Hopkins'] arrest[,] Mr. Shifflet admitted that he had lied about [Hopkins'] involvement in the burglary.

Trial Court Opinion ("T.C.O."), 2/2/2015, at 1-2 (references to notes of testimony omitted; footnote omitted).

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Based upon these events, Hopkins was charged with possession of a controlled substance with intent to deliver—cocaine, possession of a controlled substance with intent to deliver—marijuana, and prohibited offensive weapons.[2] On October 1, 2014, Hopkins filed a motion to suppress the evidence obtained through the execution of the search warrant. On November 6, 2014, the trial court held a hearing on Hopkins' motion, which yielded the factual history of this case that is summarized above.

In both his motion and at the evidentiary hearing, Hopkins maintained that the search warrant was not supported by the necessary probable cause because the only evidence linking Hopkins to the alleged burglary was the statement by Shifflet. However, Shifflet later admitted that his assertion implicating Hopkins was fabricated. Hence, according to Hopkins, the affidavit of probable cause contained a material misstatement, without which, probable cause did not exist. Moreover, Hopkins argued that no good faith exception existed that would permit the Commonwealth to use the seized evidence against Hopkins at trial. At the conclusion of the hearing on Hopkins' motion, the trial court agreed with Hopkins, and granted his motion.

_____

[2] 35 P.S. § 780-113(a)(30) (two counts); 18 Pa.C.S. § 908, respectively.

On December 5, 2014, the Commonwealth filed a notice of appeal, wherein the Commonwealth certified that the trial court's order substantially handicapped or terminated its prosecution pursuant to Pa.R.A.P. 311(d). The trial court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). However, the court's order apparently got lost within the interoffice workings of the District Attorney's Office, and counsel for the Commonwealth did not receive it. The Commonwealth filed a petition seeking permission to file a concise statement *nunc pro tunc*, in which it candidly explained the inadvertent misplacement of the order. The trial court granted the order, and permitted the Commonwealth to file its concise statement *nunc pro tunc*.[3] On February 2, 2015, the trial court issued an opinion pursuant to P.A.R.A.P. 1925(a).

The Commonwealth presents the following question for our review: "Did the lower court err in granting [Hopkins'] suppression motion where the police officer acted in good faith in seeking a search warrant based on information provided to him by an alleged co-defendant that ultimately proved false?" Brief for the Commonwealth at 4.

We begin with our well-established standard of review:

---

[3] Hopkins does not contest the trial court's decision to permit the Commonwealth to file a concise statement *nunc pro tunc*.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of facts bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Scott*, 916 A.2d 695, 696 (Pa. Super. 2007) (quotation omitted).

In this case, a detective secured a search warrant purportedly supported by probable cause. The probable cause was based upon Shifflet's statement to the detective that Hopkins was involved in a burglary. The detective, relying upon Shifflet's accusation in good faith, executed the search warrant, leading to the seizure of drugs and a weapon from Hopkins' residence. However, the problem arose later when Shifflet conceded that his statement implicating Hopkins entirely was untrue. The Commonwealth contends that, because the detective had relied upon Shifflet's assertion in good faith, the evidence secured via the execution of the search warrant should not be suppressed. Hopkins, on the other hand, argues that, because the Pennsylvania Constitution does not support a good faith exception to Article I, Section 8, the evidence must be suppressed. The trial

court agreed with Hopkins, albeit reluctantly.[4] We agree with Hopkins and the trial court.

As a general rule, "if a search warrant is based on an affidavit containing deliberate or knowing misstatements of material fact, the search warrant is invalid." **Commonwealth v. Murphy**, 795 A.2d 997, 1006 (Pa. Super. 2002) (quoting **Commonwealth v. Clark**, 602 A.2d 1323, 1325 (Pa. Super. 1992) (plurality)). Furthermore, "misstatements of fact will invalidate a search warrant and require suppression of the fruits of the search only if the misstatements of fact are deliberate and material." **Commonwealth v. Baker**, 24 A.3d 1006, 1017 (Pa. Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013) (citations omitted). "A material fact is one without which probable cause to search would not exist." **Commonwealth v. Tucker**, 384 A.2d 938, 941 (Pa. Super. 1978). The Commonwealth does not dispute that Shifflet's allegation was untrue, nor does the Commonwealth contend that probable cause existed sans the Shifflet

---

[4] At the conclusion of the suppression hearing, the trial court ruled as follows:

> Accordingly, we will grant [Hopkins'] request. We will suppress the items seized in this case. We are not confident that our decision will withstand appellate appeal, but we are confident that presently it is in accord with the current law as we see it and we are bound to apply it given the facts and circumstances of this particular case.

Notes of Testimony, 11/6/2014, at 32.

allegation. Thus, we need only consider whether, under these circumstances, Hopkins was entitled to suppression, or whether an approach similar to the good faith exception should apply because, as the Commonwealth notes, the police officers in this case did not intentionally or recklessly deceive the issuing magistrate. For the reasons that follow, we hold that Hopkins is entitled to suppression, and that no good-faith exception applies.

Article I, Section 8 of the Pennsylvania Constitution provides as follows:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed by the affiant.

Pa. Const. art. I, § 8. Although similar in language and purpose, Article I, Section 8 and the Fourth Amendment to the United States Constitution differ in at least one significant way that is essential to our resolution of this case. *See Commonwealth v. Edmunds*, 586 A.2d 887, 895-96 (Pa. 1991). Analysis of, and remedies for, violations of Article I, Section 8 focus upon the privacy of the individual, while those under the Fourth Amendment focus primarily upon deterring police misconduct. *See Commonwealth v. Antoszyk*, 985 A.2d 975, 983 (Pa. Super. 2009) (*Antoszyk I*) (citing *United States v. Calandra*, 414 U.S. 338, 347 (1974)).

Accordingly, in **Edmunds**, our Supreme Court rejected the United States Supreme Court's promulgation of a good-faith exception to the exclusionary rule in **United States v. Leon**, 468 U.S. 897 (1984), as follows:

> given the strong right of privacy which inheres in Article 1, Section 8, as well as the clear prohibition against the issuance of warrants without probable cause, or based upon defective warrants, the good faith exception to the exclusionary rule would directly clash with those rights of citizens as developed in our Commonwealth over the past 200 years.

**Edmunds**, 586 A.2d at 901. The Court explained:

> [W]e disagree with the Court's suggestion in **Leon** that we in Pennsylvania have been employing the exclusionary rule all these years to deter police corruption. We flatly reject this notion. We have no reason to believe that police officers or district justices in the Commonwealth of Pennsylvania do not engage in "good faith" in carrying out their duties. What is signification, however, is that our Constitution has historically been interpreted to incorporate a strong right of privacy, and an equally strong adherence to the requirement of probable cause under Article 1, Section 8. Citizens in this Commonwealth possess such rights, **even where a police officer in "good faith" carrying out his or her duties inadvertently invades the privacy** or circumvents the strictures of probable cause. To adopt a "good faith" exception to the exclusionary rule, we believe, would virtually emasculate those clear safeguards which have been carefully developed under the Pennsylvania Constitution over the past 200 years.

**Id.** at 899 (emphasis added).

We now turn to the cases which have applied **Edmunds** and recognized that no good faith exception exists in similar situations to the case at bar, beginning with **Clark**. In **Clark**, a police officer applied for a

search warrant to search Clark's residence based largely upon statements and observations made by a confidential informant. 602 A.2d at 1326. In the affidavit of probable cause, the officer stated that the informant was reliable, and that the officer had spoken with him frequently in the weeks leading up to the execution of the warrant. The informant told the officer that he had observed Clark deliver cocaine in a housing project on several occasions. Furthermore, the informant stated that Clark would take orders from buyers while in his vehicle, a dark gray Pontiac, and then return to his residence in the vehicle. Clark would then retrieve the cocaine from the residence, return to his vehicle, and then deliver the cocaine to the buyer. The informant told the officer that he had observed cocaine in Clark's hands **within the 48 hours** prior to the application for the search warrant. *Id.* The warrant issued, and the police executed it. The search revealed drugs and guns in the home.

Prior to trial, Clark filed a motion to suppress all of the evidence that was seized from his house during the execution of the warrant. At the hearing on the motion, among other evidence, Clark produced a receipt from an auto service that demonstrated definitively that his vehicle, the Pontiac that the informant alleged had been used during the drug sales that he allegedly had observed, was in an automotive repair shop. The receipt showed that the vehicle was taken to the shop and kept there approximately three days before the informant purportedly saw Clark use it for drug sales, and was picked up by his father one day after those alleged observations.

The trial court granted Clark's suppression motion based upon the factually inaccurate representations within the affidavit of probable cause. The Commonwealth then appealed to this Court. *Id.* at 1325.

We first noted that a valid search warrant must include the time frame during which relevant and material observations were made. *Id.* at 1326. We held that, because the information regarding the time frame was rendered inaccurate by the receipt from the automobile service station, the affidavit was incomplete and probable cause was lacking. There, as here, the Commonwealth argued that the good faith exception should save the evidence from suppression. Relying exclusively upon our Supreme Court's proclamation in *Edmunds*, which had been decided only one year prior, the Court rejected the Commonwealth's analysis, and affirmed the trial court's suppression award. *Id.* at 1327-28.

Unfortunately, the lead opinion in *Clark*, written by Judge Hoffman, was not joined by any other judges. Judge Cavanaugh only concurred in the result. Judge Popovich, in a one-sentence concurring opinion, agreed with the lead opinion that suppression was justified, but would have done so based upon the trial court's reasoning that the police should have undertaken an independent investigation of Clark after the informant had provided them with the (inaccurate) information. *Id.* at 1328. Hence, *Clark* is a plurality opinion, and amounts to persuasive, but not binding, authority. *See Commonwealth v. Scott*, 420 A.2d 717, 719 (Pa. Super. 1980) ("It is true that plurality opinions do not automatically have

precedential authority."). Thus, we would not be bound by **Clark**, had no other subsequent events taken place. However, a later panel of this Court adopted the lead opinion in **Clark** in **Antoszyk I**.

In **Antoszyk I**, a detective spoke with a reliable informant, who previously had provided police with information that led to the arrests of two drug dealers. **Antoszyk I**, 985 A.2d at 976. The informant told the detective that Antoszyk was a large-scale dealer of marijuana, and that he had observed large quantities of marijuana in Antoszyk's home. Based upon this information, the detective prepared an affidavit of probable cause and applied for a search warrant. In the affidavit, the detective reported that the informant had told him, among other incriminating information, that he had been in Antoszyk's home within the forty-eight hours leading up to the application for the warrant, and had, within that time period, observed a substantial quantity of marijuana for sale. **Id.** at 977. Due to the informant's previous reliable information, the detective took no further investigative actions, and applied for the warrant. The warrant issued, and the police executed the warrant on Antoszyk's home, which uncovered ten pounds of marijuana.

At a subsequent suppression hearing, the informant testified that he had lied to the detective. Specifically, the informant admitted that he had not been in Antoszyk's home for at least six weeks prior to talking to the detective. The informant had observed Antoszyk with small amounts of marijuana for personal use, but had not seen him with the large quantities

that he had originally suggested. Any information regarding Antoszyk's large-scale drug dealings were just rumors that he had overheard. The informant testified that he lied to the police in an effort to get them to arrest Antoszyk, who had been pestering the informant about a three-year-old drug debt. *Id.*

Crediting the informant's testimony, the trial court suppressed the evidence seized pursuant to the execution of the search warrant. The Commonwealth appealed. In a published opinion, we affirmed the trial court. After distinguishing some inapposite cases cited by the Commonwealth, we held that *Edmunds*' holding that there is no good faith exception in Pennsylvania and the lead opinion in *Clark* compelled the conclusion that the trial court correctly suppressed the evidence. *Antoszyk I*, 985 A.2d at 983-84. Specifically, we held that:

> The [informant] admitted that he lied when he said he was at [Antoszyk's] house recently and witnessed bulk quantities of marijuana for sale there, although the affidavit accurately reflected what he told the detective. . . . The affidavit relies only on the [informant's] averments, citing no other independent source to verify the [informant's] observations other than a search of [Antoszyk's] prior criminal record. There can be no dispute, therefore, that the [informant's] deliberate misstatements were the sole basis for the finding of probable cause, and the Commonwealth does not assert otherwise. Accordingly, once the trial court determined that the [informant] was credible in testifying that he did not personally witness the drug activity at [Antoszyk's] home as stated in the affidavit of probable cause, the search warrant became invalid.
>
> \*    \*    \*
>
> Article I, Section 8 of the Pennsylvania Constitution protects the citizens of this Commonwealth from material misstatements

- 12 -

made deliberately or knowingly in an affidavit of probable cause. The remedy for such a violation, if there is no other independent basis for a finding of probable cause, is invalidation of the search warrant. Accordingly, the trial court properly invalidated the warrant and suppressed the evidence obtained as a result of the warrant.

*Id.* (citations and footnote omitted).

Notably, the Pennsylvania Supreme Court granted *allocatur* following **Antoszyk I**, but could not reach a majority decision. **See Commonwealth v. Antoszyk**, 38 A.3d 816 (Pa. 2012) (**Antoszyk II**). Justices Saylor (now Chief Justice), Baer, and Todd, would have affirmed this Court's opinion. None of those three Justices authored an opinion. Chief Justice Castille, and Justices Eakin and McCaffery would have reversed the opinion. Justice Eakin authored an opinion in support of reversal that was joined by Chief Justice Castille and Justice McCaffery.

The Commonwealth urges us to reject **Edmunds**, **Clark**, and **Antoszyk I**, and adopt Justice Eakin's proposed analysis in **Antoszyk I**. Justice Eakin would have held that the **Antoszyk I** panel, as a preliminary matter, incorrectly relied upon **Edmonds** and incorrectly adopted **Clark**, because this case is not a good-faith exception case, at all. **Antoszyk II**, 38 A.3d at 818. Additionally, Justice Eakin would have held that Pennsylvania decisions on material misstatements in affidavits of probable cause are limited to representations that are made to issuing magistrates, not to the police. *Id.* at 819. In support, Justice Eakin noted that the warrant in **Antoszyk II** was "valid because *the process* was valid and

probable cause existed." *Id.* (emphasis added). Additionally, Justice Eakin maintained that there were no misstatements in the affidavit at all. In the affidavit, the detective did not report to the magistrate that the informant actually was in Antoszyk's home, but only that the informant said he was in the home. Whether the informant ever was in the home was irrelevant to Justice Eakin, because no one had misled the magistrate in such a way. The magistrate was informed only that the informant said he was there. Hence, in Justice Eakin's view, there was no misstatement in the affidavit.

Because *Antoszyk I* was affirmed by an equally divided Supreme Court, *Antoszyk I* is binding precedent, and nothing from the *per curiam* affirmance, including the opinion in support of reversal, binds this Court in any way. *See Commonwealth v. Mosley*, 114 A.3d 1072, 1082 n.11 (Pa. 2015) (citation omitted). We do not opine on the merits of Justice Eakin's pronouncements because, simply put, we are required to apply binding precedent, *i.e. Antoszyk I*, and cannot trump that precedent with non-binding opinions, *i.e.*, Justice Eakin's opinion in support of reversal in *Antoszyk I*. We decline the Commonwealth's invitation to ignore the binding case and apply the non-binding one.

Consequently, the above-quoted analysis from *Antoszyk I* applies with full force here. As in that case, a detective executed a warrant based upon Shifflet's knowingly fraudulent statement. The detective accurately reported what Shifflet had told him. There was no other independent information to support probable cause in the affidavit, and the

- 14 -

Commonwealth does not argue otherwise. Once the trial court learned that Shifflet had lied to the police, the trial court correctly determined that the warrant was invalid, and that the evidence had to be suppressed.

Finally, we note that the record supports the Commonwealth's argument that the detective in this case did not intentionally or recklessly mislead the magistrate. That may be true. But, it is also irrelevant. There is no doubt that *Edmunds* remains controlling precedent in this Commonwealth. *See Commonwealth v. Johnson*, 86 A.3d 182, 187 (Pa. 2014). There is no good faith exception to the exclusionary rule in Pennsylvania, and the detective's efforts in this case, however intentioned, cannot serve as an avenue to escape the inescapable. The evidence had to be suppressed.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2015

- 15 -