J-S30008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMAL BRAHEEM MUHAMMAD | : | |
| | : | |
| Appellant | : | No. 2648 EDA 2017 |

Appeal from the Judgment of Sentence July 24, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0007263-2015

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:               **FILED OCTOBER 17, 2019**

Appellant, Jamal Braheem Muhammad, challenges the judgment of sentence entered in the Delaware County Court of Common Pleas, following his convictions for possession with intent to deliver cocaine and heroin, and conspiracy. On appeal, he contests, *inter alia*, the trial court's denial of his motion to suppress. After careful review, we affirm.

A confidential informant ("CI") approached police with a tip that Appellant, whom the CI knew as "Slim," was selling drugs out of his home. Police surveilled the home and observed foot traffic consistent with drug activity – a steady stream of people coming to the house and leaving only minutes later. Eventually, detectives arranged for the CI to conduct two drug transactions with Appellant. Following the two sales, Appellant informed the CI over the phone about the availability of additional drugs for purchase.

Based on the sales and the information about Appellant's new supply of drugs, detectives obtained a search warrant for Appellant's home. They seized several grams each of heroin and cocaine, as well as other indicia of large drug sales, including a scale. The police arrested Appellant and his mother.[1]

Appellant filed an omnibus pretrial motion, which included a motion to suppress the evidence obtained pursuant to the search warrant. Appellant claimed the warrant contained material misstatements of fact and that it was not supported by probable cause. Appellant's support for these contentions largely revolved around the Commonwealth's refusal to supply the name of the CI, as well as Appellant's claim that he was working on the two dates when the drug transactions allegedly took place.

The court denied the motion to suppress, and Appellant proceeded to a jury trial. The jury convicted Appellant of two counts each of possession with intent to distribute and conspiracy.[2] The court ordered a pre-sentence investigation report, and sentenced Appellant to an aggregate 7-14 years' incarceration, with a 15-year probationary tail. Appellant did not file any post-sentence motions. Instead, he timely filed his notice of appeal, and complied with Pa.R.A.P. 1925(b). This case is now properly before us.

---

[1] Appellant's mother was initially a co-defendant in this case; however, her motion to sever was ultimately granted before trial, and so her involvement is not before us.

[2] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 903, respectively.

In his first issue, Appellant alleges the court erred by denying his motion to suppress, as he contends the warrant was not supported by probable cause.

We review an order denying a motion to suppress by determining whether the findings of fact are supported by the record, and whether the legal conclusions drawn from those facts are without error. **See Commonwealth v. Freeman**, 128 A.3d 1231, 1240 (Pa. Super. 2015). "In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted." **Id**. (citation omitted). "Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." **Commonwealth v. Fulmore**, 25 A.3d 340, 346 (Pa. Super. 2011) (citation omitted).

The United States and Pennsylvania Constitutions both require that search warrants be supported by probable cause. **See Commonwealth v. Jones**, 988 A.2d 649, 655 (Pa. 2010). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." **Id**. (citation omitted).

We accord deference to a magistrate's finding of probable cause. **See Commonwealth v. Harlan**, 208 A.3d 497, 505 (Pa. Super. 2019). "The task

of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1048 (Pa. 2012) (citations omitted). "An informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." ***Commonwealth v. Gagliardi***, 128 A.3d 790, 795-796 (Pa. Super. 2015) (citation omitted). Finally, we note that a defendant is not entitled to the disclosure of a confidential informant's identity, even when the informant supplied evidence to support an affidavit for probable cause, where disclosure could jeopardize the safety of the CI. ***See Commonwealth v. Miller***, 518 A.2d 1187, 1195 (Pa. 1986).

Officer William Carey, a nine-year veteran of the police force, wrote the affidavit of probable cause. In it, he averred he has worked with the narcotics squad for the past four years, and is "familiar with the ways that controlled substances are cultivated, manufactured, weighed, packaged, stored, sold and distributed." Affidavit of Probable Cause, filed 8/12/15, at 2. Carey recounted that, in the preceding 30 days, the CI approached him with information about a local drug trafficker. The affidavit did not name the CI, and stated that the CI asked to remain anonymous for fear of retaliation.

However, Carey averred he has worked with the CI before, and believed the CI to be reliable and truthful. In support of this, Carey claimed the CI had previously helped to identify other drug traffickers and their locations, and corroborated information obtained by the police about traffickers. Further, Carey asserted the CI made statements against his own penal interest to Carey, including admissions that he has purchased and used heroin.

The affidavit reported the CI claimed to have purchased heroin from a man he knew as "Slim." Slim was described as a black male in his late twenties, with a height around 5'8" or 5'9", weighing approximately 200 pounds. The CI professed that Slim dealt drugs out of his home on 1310 Perkins Street, in Chester, Pennsylvania. The CI had been inside of Slim's home within the past thirty days, and seen a large quantity of U.S. currency as well as heroin packaged for sale.

After receiving the tip, Carey and other officers conducted hidden surveillance around 1310 Perkins Street. The officers observed many people approach the front door, enter, and exit again only moments later. The affidavit claimed this behavior was consistent with drug trafficking. The officers also saw a man who matched the CI's description of Slim routinely entering and exiting the home.

After investigation, Carey determined the man known as Slim was Appellant. Carey searched for Appellant in the Pennsylvania Department of Transportation's database, and confirmed Appellant's known address was 1310 Perkins Street. Carey also obtained a picture of Appellant and showed it

to the CI. The CI immediately recognized Appellant as Slim, the man from whom the CI had previously purchased heroin.

Carey then recounted meeting with the CI to set up a controlled buy of heroin. After first searching the CI for money and drugs, Carey gave the CI prerecorded buy money and drove to the vicinity of 1310 Perkins Street. The CI was observed entering the front door of the home, and exiting one or two minutes later. The CI possessed an unspecified quantity of heroin after exiting 1310 Perkins, and told Carey it had been purchased from Appellant. The drugs were field-tested and confirmed to be heroin.

The CI made a second controlled heroin buy shortly thereafter. Within 48 hours before Carey applied for the search warrant, the CI told him about a conversation the CI had with Appellant, where Appellant advised the CI that he had additional heroin for sale and invited the CI to purchase it at his home.

Appellant's contention that the affidavit failed to provide sufficient probable cause for the search warrant is unavailing. The CI admitted to previously having engaged in drug transactions with Appellant. According to police, the CI had provided reliable information about drug trafficking in the past. Finally, the police worked to corroborate some details of the CI's tip, including observations of activity consistent with drug trafficking. Based on the foregoing, the affidavit contained sufficient probable cause.

Appellant's primary method for combating the probable cause in the affidavit is to contrast it with conflicting details elicited at the suppression hearing. While we address those contentions, we do so in Appellant's next

issue, which questions whether Carey made a knowing misstatement of material fact in the affidavit of probable cause. This separate issue for review is limited to whether the affidavit presented probable cause for the search. As it was highly likely that contraband would be found in Appellant's home, the magistrate did not err in issuing the search warrant. Therefore, the trial court properly denied Appellant's motion to suppress it on such grounds. Appellant is due no relief on this issue.[3]

In Appellant's second issue, he contends the court should have suppressed the seized evidence because the affidavit of probable cause contained "deliberate and material misstatements of fact." Appellant's Brief, at 18.

Deliberate, knowing misstatements of facts critical to a finding of probable cause invalidate a search warrant. *See Commonwealth v. Antoszyk*, 985 A.2d 975, 982 (Pa. Super. 2009). "[W]hile the mere presence of an error in an affidavit of probable cause supporting a search warrant does not invalidate the warrant, such a misstatement of fact will invalidate the warrant if it is deliberate and material (a material fact being one without which

---

[3] We note that Appellant extensively quotes law regarding anticipatory search warrants, which is inapplicable in this case. An anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *Commonwealth v. Glass*, 754 A.2d 655, 656 (Pa. 2000) (citation omitted). Here, the warrant is based on probable cause that, *at the time of writing*, evidence of Appellant's crimes could be located at 1310 Perkins Street.

probable cause to search would not exist).” ***Commonwealth v. Baker***, 24 A.3d 1006, 1018 (Pa. Super. 2011) (citations omitted).

Here, Appellant claims the affidavit of probable cause stated that officers observed many people going in and out of 1310 Perkins Street, consistent with drug trafficking. Appellant contrasts this with Officer Carey’s testimony at the suppression hearing, where he stated he only saw Appellant entering and exiting the home. ***See*** N.T. Suppression Hearing, 3/31/17, at 21. In addition, Appellant contends that Carey’s affidavit entirely omits the participation of Officer Katherine Reardon.

At the suppression hearing, Carey testified that he personally saw Appellant entering and exiting 1310 Perkins Street. ***See id***., at 21. Specifically, Carey was asked the following:

> [Counsel for the Commonwealth]: Did you see any other of the people that you saw maybe loitering around this address, did you see anybody else enter or exit the residence besides the person described as – matched the description of Slim, a/k/a, [Appellant]?
>
> [Carey]: Not during my observations.
>
> [Counsel for the Commonwealth]: Did you see any of the other individuals loitering or around this area make any open air sales or transactions consistent with drug dealing at this residence?
>
> [Carey]: I did not.

***Id***., at 21.

Carey continued to describe a “drive-by,” where he would drive through the area in his police vehicle and “see – who I see hanging out there, see if I

can spot [Appellant], see if I can see any people that don't belong in that area who might be purchasing narcotics and, if so, you know, try to act on that. But no, I didn't see anybody else going in and out of the house." *Id.*, at 22.

Appellant cross-examined Carey on his statements. Appellant claimed Carey had contradicted himself, a claim Carey vigorously denied. *See id.*, at 41-42. Carey countered that he believed the earlier question had been regarding whether others had access to the home, to which he replied that only Appellant went in and out of the house unassisted. *See id.*, at 42, 44. Carey then clarified that he, as well as other officers, did observe many people going into the house and leaving shortly thereafter, consistent with their knowledge of drug trafficking and with what Carey wrote on the affidavit of probable cause. *See id.*, at 43-45.

Carey also testified that Officer Katherine Reardon participated as an undercover agent in the second controlled drug buy. *See id.*, at 96-97. He stated that he had not included Reardon's name in the affidavit of probable cause for her protection, as she was still undercover and conducting ongoing investigations in other cases at the time. *See id.*, at 98.

Finally, Reardon testified. She stated she drove the CI to 1310 Perkins Street, and watched as the CI met Appellant immediately outside of the home. *See id.*, at 116. Reardon testified that Appellant walked into the home, and then walked out and conducted what she believed to be a hand-to-hand drug transaction with the CI. *See id.*, at 116-117. The CI then walked back to Reardon's car, got in, and showed Reardon the drugs he received from

Appellant. **See id**., at 117. Reardon then drove to Carey's location; Carey field-tested the drugs and determined they were heroin. **See id**.

Appellant points to the foregoing as proof the affidavit contained deliberate misstatements of material fact. We disagree. Carey's choice not to name Officer Reardon in the affidavit did not constitute a material misstatement of fact. Indeed, the affidavit makes clear that Carey was one of many officers who participated in the investigation of Appellant by surveilling the area around his home.

Further, Carey clarified the meaning of his statement that he had only seen Appellant entering and exiting the home. Carey averred that he had only seen Appellant *accessing* the home, but that he and other officers observed many people entering and exiting the home for very short periods.

Even if we were to agree with Appellant that Carey testified in conflict with the affidavit of probable cause, we are unconvinced Appellant has shown any deliberate misstatements that would invalidate the affidavit of probable cause. Because Appellant has failed to demonstrate a purposeful misstatement of material fact, we find he is entitled to no relief on this issue.

In Appellant's remaining issue, he argues that the trial court erred in denying his motion for a mistrial, as Carey testified untruthfully at trial that he discovered eight additional bags of heroin in the home search. Appellant indicates those bags were actually obtained in the controlled drug buys conducted by the CI. He avers the controlled buys were excluded from trial, as the Commonwealth did not wish to present the CI to testify. He asserts the

heroin taken during those buys was nevertheless included as part of one of the Commonwealth's exhibits. Appellant concludes this Court must order a new trial.

"It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion." **Commonwealth v. Chamberlain**, 30 A.3d 381, 422 (Pa. 2011) (citations omitted). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Id**. (citations omitted).

The trial court can counteract improper testimony by issuing a curative instruction. **See Commonwealth v. Manley**, 985 A.2d 256, 266 (Pa. Super. 2009). When determining whether a curative instruction was insufficient and a mistrial required, the reviewing court must consider "whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate." **Id**., at 267 (citations omitted).

At trial, Carey stated that he recovered a black shopping bag with drugs in it at Appellant's house. **See id**., at 116-117. The Commonwealth then introduced a stipulation that police submitted for testing 133 glassine bags of heroin, seven sandwich bags of cocaine, and one sandwich bag of crack cocaine that were contained in the black shopping bag, as well as two manila

envelopes that each contained four glassine bags of heroin, stamped with the label "Godfather." *See* N.T. Trial, 5/3/17, at 138-139.

On cross-examination, Appellant's counsel asked Carey about the manila envelopes with the eight bags of Godfather heroin. *See id*., at 170. Specifically, Appellant inquired about where exactly they were located in the house when police executed the search warrant. *See id*. Carey, who was aware that the controlled buys conducted by the CI were excluded from the trial, stated that he was uncertain about where the drugs not in the black shopping bag were located. *See id*. Counsel continued questioning as Carey repeatedly attempted to avoid answering by stating that he could not recall where in the house the items were recovered. *See id*, at 174-175.

Counsel then showed Carey the list of items recovered from the house pursuant to the search warrant, and asked why the Godfather bags were not on it. *See id*., at 176. Carey asked for the list from the stipulation, and said that the packets were on there. *See id*., at 178. Counsel again highlighted the difference between the lists, and asked Carey to confirm he had stated that he recovered the Godfather packets from the house. *See id*., at 181. Carey agreed that he had testified the packets were recovered from the home. *See id*.

In a sidebar afterward, Appellant's counsel asked for a mistrial based on Carey's testimony. *See id*., at 202. The Commonwealth pointed out that Appellant had stipulated to the list of items tested by the police's forensic examiner. *See id*., at 205. Counsel for the Commonwealth also informed the

court that she had expressly instructed Carey not to testify about the CI or the controlled buys. *See id*. The court dismissed the jury for the day to consider how to respond.

The court conferred again the next day with the parties in the robing room before reading the jury a cautionary instruction that stated the two manila envelopes containing four bags each of Godfather heroin were not recovered from 1310 Perkins Street during the execution of the search warrant. *See* N.T. Trial, 5/4/17, at 207. The court instructed the jury not to consider the envelopes as evidence. *See id*. And the Commonwealth withdrew the earlier exhibits containing the forensic examiner's testing of the Godfather bags, and submitted into evidence a list without those bags instead. *See id*.

Here, Appellant, not the Commonwealth, intentionally elicited the testimony. Carey repeatedly attempted to dodge answering, knowing that the testimony about where the heroin was actually found was not permitted. Appellant continued to needle Carey about the eight bags, until Carey testified that he found them in the house.

The trial court did not condone Carey's misstatement, and states in his opinion that he did not permit the Commonwealth to rehabilitate Carey by allowing him to accurately explain where he found the Godfather heroin. Instead, the parties entered a new stipulation that excluded the Godfather bags, and the court issued a curative instruction, which told the jury to completely disregard the testimony about the Godfather bags. The court explicitly stated those bags were not found in Appellant's house.

If anything, the curative instruction further diminished Carey's credibility as a witness. Appellant's complaint that Carey testified improperly when Appellant intentionally chose to elicit the testimony in the first place is unavailing. And Appellant overlooks that police recovered approximately 133 additional bags of heroin aside from the eight Godfather bags. Therefore, we cannot conclude that the unavoidable effect of the testimony about the Godfather heroin was to prevent the jury from fairly weighing the evidence. As Appellant's issues are without merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/19