COMMONWEALTH of Pennsylvania, Appellee,

v.

Jerome BROWN, Appellant.

Superior Court of Pennsylvania.

Submitted July 21, 2003.
Filed Nov. 14, 2003.

Monica D. Cliatt, Harrisburg, for appellant.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Com., appellee.

BEFORE: KLEIN, BENDER and TAMILIA, JJ.

OPINION BY BENDER, J.:

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he was convicted of various charges of illegal drug possession. Appellant raises three issues in his brief, whether the court erred in denying Appellant's motion to suppress

where the court essentially required the Appellant to bear the burden of proof during a hearing challenging the veracity of the statements in the affidavit of probable cause; whether the Commonwealth failed to establish the admissibility of the evidence discovered as a result of the search warrant; and whether the court erred in denying Appellant's request to produce the confidential informant? We vacate and remand.

¶ 2 On July 31, 2002, Investigator Levell Jenkins of the Harrisburg Vice Unit, along with other members of his unit, executed a search warrant for the premises located at 1315 North Sixth Street, Apartment 303, Harrisburg, Pennsylvania. The apartment was rented by Appellant and the warrant had been issued the previous day. The affidavit of probable cause reads, in material part:

Affiant is Inv. Levell Jenkins of the Harrisburg Bureau of Police Organized Crime and Vice Control Unit. I have been a Police Officer for nine years and have been assigned to the Vice Unit for four years. I have been involved in numerous of [sic] drug investigations where I have made hundreds of drug purchases and arrests. I have testified as an expert in drug trafficking in Dauphin County Court.

In this case, Affiant received information from a reliable confidential informant that an individual known as Crow is selling crack cocaine from his residence located at 1315 North 6th Street, Apartment 303, This informant has supplied the Harrisburg Police Vice Unit with information in the past about types of drugs and individuals involved in drug trafficking. This information has led to the arrest and conviction of individuals for violation of the Pennsylvania Drug Law.

Affiant also received information from a second reliable confidential informant within the past five days that Crow was selling cocaine. This informant identified Crow as Jerome Brown and that he lives at the Jackson Lick Apartment Building located at 1315 North 6th Street, in the City of Harrisburg. This second reliable confidential informant has supplied the Harrisburg Police Vice Unit with information in the past about individuals involved in drug trafficking that has led to the arrest and conviction of persons for violation of the Pennsylvania Drug Law.

The informant in this case agreed to make a purchase from the above mentioned location. The informant did identify a picture of Jerome G. Brown as Crow. The informant was searched before and after the purchase. The informant was supplied with serialized currency. The informant entered and exited the building located at 1315 North 6th Street. The informant returned to my location and provided me with a quantity of suspected crack cocaine. I conducted a field test of the suspected crack cocaine with positive results. This purchase occurred within the past 48 hours.

Affidavit of Probable Cause.

¶ 3 During the search of Appellant's apartment, police discovered crack cocaine, plastic baggies and a bag of marijuana. Given the result of the search, Appellant was charged with a variety of drug possession offenses. On November 4, 2002, Appellant filed an omnibus pre-trial motion seeking suppression of the evidence found as a result of the execution of the search warrant and also requested the court order the Commonwealth to produce the confidential informant (CI) who had allegedly participated in the controlled buy referenced in the affidavit of probable cause.

A hearing was held on November 7, 2002, after which Appellant's motion was denied. Appellant was subsequently convicted in a bench trial held on December 13, 2002. Following the imposition of sentence, Appellant took the present appeal.

¶ 4 Although Appellant asserts three numbered issues, in reality, a review of the argument contained in Appellant's brief indicates that Appellant's appeal really boils down to an assertion that the court erred in denying Appellant's request to produce the confidential informant (CI) so that Appellant could refute material averments in the affidavit of probable cause.[1] Consequently, we shall address this issue.

¶ 5 Appellant correctly asserts that he is entitled to attack the averments in the affidavit of probable cause. In *Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187 (1986), our Supreme Court stated:

> The [*Com. v.*] *Hall* [451 Pa. 201, 302 A.2d 342 (1973)] Court concluded that the veracity of facts establishing probable cause recited in an affidavit supporting a warrant can be challenged and examined at a suppression hearing. *See also Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441 (1970). As a basis for this conclusion the Court in *Hall* noted:
>
> > ... the right to challenge the truthfulness of recitals in a warrant follows from the command of *Aguilar [v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ]–*Spinelli [v. U.S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) ] that the magistrate make a "detached and objective determination" of probable cause. [Citation omitted.] If a magistrate is furnished, and reviews falsified averments, he is effectively '[precluded from making] a detached and objective determination.' ... 'Modern thought ... would make incongruous any holding that a search warrant is *beyond attack even on proof that the allegations on which it was based were perjured.*' (Emphasis in original.)
>
> *Id.*, 451 Pa. at 205–206, 302 A.2d at 344–345.
>
> Proceeding from this premise, the *Hall* Court rejected the Commonwealth's contention that the request to challenge the veracity of the warrant in that case should be denied "because appellant did not specify *prior* to the hearing precisely which part of the warrant was inaccurate." *Id.*, 451 Pa. at 206, 302 A.2d at 345. There the Court properly ruled that the proffered restriction was "unduly restrictive" and would "virtually emasculate" the defense's right to establish that the facts supporting a warrant may be shown to be false or misleading.

*Id.* at 1192. Moreover, Appellant is correct to the extent he contends that he is not required to meet any particular burden prior to attacking the veracity of the averments. Again, an excerpt from *Miller* demonstrates this point:

> In *Hall* we established, as a matter of state law, that a defendant is entitled to make an inquiry into the veracity of statements included in an affidavit supporting the warrant without conditioning that right upon a "substantial preliminary showing" of the potential falsity of those facts.

*Id.* at 1194–1195.

Lastly, if a search warrant is based upon an affidavit containing deliberate or material misstatements, the search war-

---

1. Closely related to this, Appellant asserts that the court imposed an incorrect burden of proof upon Appellant to demonstrate the need for disclosure of the CI.

rant is invalid. *Commonwealth v. Clark,* 412 Pa.Super. 92, 602 A.2d 1323, 1325 (1992).

¶ 6 Of course, an allegation that an affidavit of probable cause contains material misstatements is easy to make—proving the matter is much more difficult. Many times there is no effective way for a defendant to realistically challenge the averments in an affidavit of probable cause since so many times the defendant will be able to offer nothing more than a denial of the allegations. Since the defendant would not be before the court unless contraband or evidence of a crime were found, or were allegedly found, the defendant's opportunity to prevail would seem almost nil, as he will understandably be viewed by the court as biased/interested and also, as one breaking the law, not a terribly credible witness. In the vast majority of cases, the only chance a defendant might have of prevailing is in the exceptionally rare circumstance where the court finds the testimony of the defendant more credible than that of the affiant/law enforcement officer. While this would seem to indeed be a very rare occasion, it is notable that such an occurrence is not without precedent. In *Commonwealth v. Bonasorte,* 337 Pa.Super. 332, 486 A.2d 1361 (1984), the trial court found the testimony of the officer-affiant "so incredulous that it raises as [sic] a genuine issue of fact as to the existence of the informant." *Id.* at 1367. Also, in *Commonwealth v. Mejia–Arias,* 734 A.2d 870 (Pa.Super.1999), this Court noted the acknowledgement by the Philadelphia County District Attorney that over 100 cases had been *nol prossed* due to the belief that law enforcement affiants "may have lied in a search warrant." *Id.* at 873. Further, *Clark, supra,* involved a case where the factual averments attributed to a CI were disproven by extrinsic evidence.

¶ 7 Since many search warrants are based upon information provided by CIs, frequently the tack taken to disprove the averments contained in the affidavit of probable cause involves compelling the production of the CI. In cases where it is asserted that there was, in fact, no CI, and that the averments regarding a CI were fabricated, compelling production of the CI operates to refute an essential allegation in the affidavit. This is the situation seen in *Bonasorte.* Other times, where it is believed the information attributed to the CI contains material misrepresentations, production of the CI might be sought to interrogate or cross-examine the CI in hopes of disproving the averments essential to the creation of probable cause.

■ ¶ 8 Generally speaking, the production of an informant is a discovery matter and subject to the following test set forth in *Bonasorte:*

> we hold that a defendant seeking production of a confidential informant at a suppression hearing must show that production is material to his defense, reasonable, and in the interest of justice. By this we mean that the defendant must demonstrate some good faith basis in fact to believe that a police officer-affiant willfully has included misstatements of facts in an affidavit of probable cause which misrepresents either the existence of the informant or the information conveyed by the informant; that without the informant's information there would not have been probable cause; and that production of the informant is the only way in which the defendant can substantiate his claim.

*Bonasorte,* 486 A.2d at 1373–74. However, the *Bonasorte* rule must be considered in conjunction with the holding in *Miller* that "the *Hall* rule does not permit the disclosure of the identity of an informant relied upon by the affiant where it is established

that the disclosure of such information would jeopardize the safety of the nongovernmental informant. This ruling also embraces the disclosure of information that would lead directly to the ascertainment of the identity of the informant." *Miller*, 518 A.2d at 1195.

¶ 9 In the present case, Appellant contended in his omnibus pre-trial motion that "it is believed and therefore averred that no confidential informant purchased drugs from the defendant within forty-eight hours of applying for the search warrant as alleged." Omnibus Pretrial Motion ¶ 6. In his motion, Appellant sought production of the confidential informant to assist in proving that no controlled buy occurred. Moreover, Appellant testified at the suppression hearing that no one purchased drugs from him at his apartment in the timeframe in question and also offered evidence, both testimonial and documentary, from which the possibility that the informant entered his apartment building could be refuted. Since Investigator Jenkins asserted that he witnessed the informant enter Appellant's building and return with crack cocaine, Appellant's assertions boil down to two possibilities. One, that the confidential informant secured crack cocaine from another location within the building after gaining access to the building and asserted that it was received from Appellant, or two, that Investigator Jenkins falsely averred that a controlled buy took place. In either case, if Appellant is correct, probable cause to support the issuance of the warrant would be lacking.

¶ 10 The affidavit of probable cause breaks down to three pieces of information. First, that a confidential informant told Investigator Jenkins that Appellant had been selling crack cocaine from his apartment and that the confidential informant was "reliable" and had provided information leading to other arrests. Sec-

ond, that another CI provided information within five days of the date of the execution of the affidavit that Appellant was selling cocaine. This CI was also classified as "reliable" and, it was asserted, had provided information to police that had led to the arrest and conviction of individuals for violations of the Pennsylvania Drug Law. Third, that the second CI completed a controlled drug buy from the location in question under Investigator Jenkins' supervision within 48 hours of the date the affidavit was executed.

¶ 11 Notably, neither of the first two items provided a time frame for when Appellant had been seen or known to have dealt drugs from his apartment. The information attributed to the first CI was merely that Appellant "is selling crack cocaine from his residence." Although touting the CI as "reliable," the affidavit provides no information as to how the CI learned this information or how fresh the CI's information was. As for information attributed to the second CI, the affidavit states that the information was received "within the last five days," but the source of the origination of this information is also missing, as is a timeframe for when Appellant was either last seen selling drugs, or when the CI last heard of a recent purchase of drugs from Appellant's residence.

¶ 12 The lack of a timeframe is important since "a search warrant is defective if the issuing authority is not supplied a time frame upon which to ascertain when the affiant obtained his information from his informant and when the informant himself obtained the information he allegedly had." *Commonwealth v., Haggerty*, 388 Pa.Super. 67, 564 A.2d 1269, 1271 (1989). *In accord, Commonwealth v. Clark*, 412 Pa.Super. 92, 602 A.2d 1323, 1326 (1992). Of course, in sizing up the affidavit of probable cause, it is readily apparent that the above two items of information are

mostly "window dressing," or corroboration, for the item that truly provides probable cause, the controlled buy from Appellant's residence, which took place within 48 hours of the application. However, it is this fact that renders the veracity of that buy so important, if the veracity of that averment is successfully attacked, probable cause is defeated.

¶ 13 In furtherance of his allegation that no CI purchased drugs from him in the time frame in question, Appellant produced a sign-in log from his apartment building for the relevant time frame and the testimony of security guards from his building. The guards testified to the visitor sign-in/admittance procedure utilized at his apartment building. The guards indicated that non-residents were admitted to the building only after displaying identification and being cleared for admittance by the tenant they were visiting. All non-resident visitors were required to sign in and out of the building. Thus, Appellant contended, his allegation that no CI purchased drugs from him could be proven rather readily by forcing the police to reveal the identity of the CI and checking the registry to see if the CI entered the building during the timeframe in question.

¶ 14 We would note that since the CI conceivably could have secured crack cocaine from another occupant of the building, the CI's signature on the registry would not conclusively prove that the controlled buy from Appellant took place.

However, the converse would seemingly not be true. That is, if there was no signature of the CI on the registry during the timeframe in question, it would seem that the premise that the CI purchased crack cocaine from Appellant would have been effectively refuted. Indeed, if the CI had no access to the inside of the building, his opportunity to buy illicit drugs from any occupant of the building, including Appellant, would seemingly have been negated. In the very least, if the name supplied did not match one appearing on the registry the affiant's averments should have been viewed with considerable suspicion and an explanation of why the CI's name was not on the registry should have been demanded.

¶ 15 In this respect, we are perplexed as to why Appellant's request and challenge was seemingly given so little regard. Here, Appellant adamantly contended that no one purchased drugs from him at his apartment during the timeframe in question [2] and, therefore, that the averments in the affidavit of probable cause must have been false. Like most individuals similarly situated, he was faced with the near logical impossibility of proving a negative. However, unlike many defendants who might have no way, other than a denial, to disprove the averments in the affidavit, Appellant offered evidence from which the averments might be put to the test—if only the court would comply by compelling the Commonwealth to disclose the one

---

2. In *Commonwealth v. Payne*, 540 Pa. 54, 656 A.2d 77, 80 (1994), our Supreme Court made the following statement:

> The instant record reveals that Appellant testified at the evidentiary hearing that he had not met the trooper prior to this arrest and that he had not been at the apartment complex where the transaction occurred on the night in question. What is that if not "evidence that suggests he was not at the scene?" In the face of this testimony, how could the Commonwealth suggest that the

officer's testimony remained uncontradicted? This is precisely the kind of showing which we indicated in [*Com. v.*] *Carter* [427 Pa. 53, 233 A.2d 284 (1967)] would suffice to require disclosure. Where the defense is one of mistaken identity, the defendant can do no more than deny his involvement and suggest that another eyewitness might offer evidence that would support his claim.

The same can be said of Appellant's testimony that no one purchased drugs from him at this apartment in the timeframe in question.

thing that would corroborate the affiant's averments. Nevertheless, rather than instilling confidence in our law enforcement affiants by compelling the simple evidence that would have · corroborated the averments, Appellant's entreaty went for naught as if the averments must be treated as sacrosanct and beyond reproach. Indeed, here it was not absolutely necessary to actually physically produce the CI. All that was necessary was for the court to compel disclosure of the name the CI used to gain admittance to the building.[3]

¶ 16 In our opinion, Appellant met the necessary burden by demonstrating that the name used by the CI to gain admittance to the apartment building was material to his defense. We further believe that the request was reasonable under the circumstances and in the interests of justice, since justice cannot condone the issuance of warrants upon knowing misstatements of material facts. As such, pursuant to *Miller*, it was incumbent upon the Commonwealth to demonstrate that production of the name the CI used

to gain admittance to Appellant's apartment building, would have jeopardized the CI's safety. This was not even asked of the Commonwealth because, as Appellant intimates, it appears that the court misapprehended the relevant inquiry and required Appellant to produce evidence of "substantial weight" that a material misstatement had been made in the affidavit. This is not the correct standard and, as Appellant has noted, indeed places an onerous burden upon him to prove a negative.[4]

¶ 17 For the above reasons, we believe it is necessary to vacate the judgment of sentence and remand for proceedings consistent with this Opinion. We note that at the time of the original proceedings if the affiant had not been privy to the registry from the apartment building, much could have been accomplished in way of aiding Appellant's efforts to test the veracity of the affidavit by simply compelling disclosure of the name the CI used to gain admittance to the building. Moreover, it would not have even been necessary to

---

3. We realize that it is possible that the CI could have gained access to the building by using an alias. However, the true identity of the Informant is not the essential proof. Assuming that the police had not been presented with a copy of the registry before hand and thus were ignorant of the names to be found on the list, all that was necessary to prove or disprove whether the CI entered the building in the relevant timeframe was disclosure of the name the CI used to gain admittance. Armed with this information, it would have been rather easy to determine whether the CI actually entered the building as averred. Whether the CI was admitted to see Appellant, or another resident, the name and/or signature should be on the registry if, in fact, the CI entered the building as averred. Alternatively, if the CI was a resident, this likewise could have been proven by disclosure of the CI's name and comparing it to a list of tenants.

4. While we would in no way suggest that law enforcement affiants regularly include know-

ingly false averments in their affidavits in order to create probable cause for the issuance of a warrant, we also recognize that, in reality, under the current state of the law there is virtually nothing to prevent the practice from occurring. If an officer has a hunch, or stale or otherwise unreliable information that someone is in possession of narcotics, he could simply aver that a controlled buy using a CI was conducted and ensure that a warrant would be issued. If the officer knows that there is no effective way to test the averment, temptation could arise to fabricate averments that will ensure the issuance of the warrant. While we do not believe that this is a regular practice, as *Bonasorte, Mejia–Arias* and possibly *Clark* demonstrate, it is likely that this has happened in the past. More importantly, as noted previously, in most cases, the defendant will have no opportunity to prove that the CI did not exist, or that key averments are not correct, particularly if the law shields the Commonwealth from producing the informant.

disclose this information to the defense. The name could have simply been provided to the court, who could have then checked the registry to see if the name appeared on the registry.[5] Whether or not this approach would still be a viable option upon remand, or whether it would be necessary to go further and compel the physical production of the CI, cannot be told from our vantage point. We trust that the trial court will be able to proceed upon remand in a fashion that gives due regard to Appellant's right to test the veracity of the averments in the affidavit while balancing the right of the Commonwealth to withhold the CI's identity should disclosure of that information jeopardize the CI's safety.

¶ 18 Judgment of sentence vacated. Remanded for further proceedings. Jurisdiction relinquished.

¶ 19 Judge TAMILIA notes dissent.

---

5. We recognize that in *Miller* the Supreme Court rejected this Court's proposal of a CI being cross-examined by the court *in camera* as an alternative to full disclosure of the CI's identity where it is believed the CI's safety will be jeopardized by disclosure of the CI's identity. It appears the Supreme Court did not feel that it was appropriate to have the court, in effect, acting as defense counsel and cross-examining witnesses. Production of the name to the court for easy comparison with the registry would not involve these concerns and, ostensibly, would still be a reasonable and acceptable alternative to full physical production of the CI.