J-A12022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FAYSAL SALIM MUHAMMAD | : | |
| | : | |
| Appellant | : | No. 1066 WDA 2021 |

Appeal from the PCRA Order Entered  August 11, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002604-2018

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED: MAY 27, 2022**

Faysal Salim Muhammad (Appellant) appeals from the order entered in the Erie County Court of Common Pleas, dismissing his first petition filed pursuant to the Post Conviction Relief Act[1] (PCRA).  Appellant seeks collateral relief from the judgment of sentence imposed following his jury conviction of attempted homicide and related offenses for a June 2018 shooting.  On appeal, he argues trial counsel was ineffective for failing to challenge a material misstatement of fact in his arrest warrant, and that the warrant is void *ab initio*.  For the reasons below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

The relevant facts underlying Appellant's conviction are as follows.[2]  On June 9, 2018, at approximately 2:44 a.m., Clifton Barney (Victim) was shot outside the Ultra View Lounge, located on Plum Street in Erie, Pennsylvania.[3]  *See* Trial Ct. Op., 11/18/19, at 1.  Erie Police Detective Sean Bogart was the lead investigator.  *See id.* at 5.  "[N]o witnesses were forthcoming" to identify the shooter and no firearm was ever recovered.  *Id.* at 5, 11.  Although a shell casing was found at the scene, "[r]esults from DNA and fingerprint testing . . . did not produce evidence" to identify the shooter.  *Id.* at 11.  However, after reviewing video surveillance from both inside and outside the Ultra View Lounge, Detective Bogart was able to obtain a description of the shooter.  *See id.* at 10.  He produced still images from the video surveillance and disseminated those images in the local law enforcement community.  *See id.* at 8-9.  Shortly thereafter, two guards from the Erie County Prison identified the suspect as Appellant.  *Id.* at 9.

Detective Bogart obtained an arrest warrant for Appellant on June 13, 2018.  Relevant herein, the detective averred the following in the affidavit of probable cause:

_____

[2] A detailed recitation of the testimony presented during Appellant's jury trial is recounted in the trial court's November 18, 2019, opinion.  *See* Trial Ct. Op., 11/18/19, at 3-15.  We reiterate only the testimony which is relevant to the issue on appeal.

[3] As a result of the shooting, Victim is now blind in his left eye, and lost vision in his right eye.  Trial Ct. Op., 11/18/19, at 11.  The bullet remains lodged in his head.  *Id.* at 11-12.

On 6-11-18 [w]e made arrangements to secure video surveillance from [Ultra View Lounge]. Upon analyzing this video, we were able to locate the suspect in the video. Suspect can be described as black male, with some facial hair, 25-30 years old, [5'11"]-[6'3"], 210-250lbs, white shirt with letters ROCK/revi and RR on back of shirt. This suspect appears to enter the bar at approx. 0028hrs and is observed on several internal cameras until 240hrs. The suspect is observed exiting the bar-Plum st, walking to black Chevy SUV, sitting in this vehicle briefly, walking from this vehicle-to south on Plum-400 blk to area where victim[ ] can be seen leaning up against a vehicle. The suspect walks behind the victim and **appears to remove firearm from waist area and one flash can be seen** and victim[ ] can be seen immediately falling forward into the roadway-Plum st. The suspect is then seen running south on Plum st out of view.

Police Criminal Complaint, 6/13/18, Affidavit of Probable Cause (PCA) at 1 (unpaginated) (emphasis added). Appellant was subsequently apprehended in Detroit, Michigan. *See* Trial Ct. Op., 11/18/19, at 12. He was charged with attempted homicide, aggravated assault, possession of a weapon, persons not to possess firearms, and firearms not to be carried without a license.[4] Appellant was represented by Eric V. Hackwelder, Esquire (preliminary hearing counsel), at his preliminary hearing held on September 17, 2018. The magisterial district judge (MDJ) held all charges for court.

Thereafter, Charles Sunwabe, Jr., Esquire (trial counsel), entered his appearance as trial counsel. On November 26, 2018, Appellant filed an omnibus pretrial motion asserting, *inter alia*, that the evidence presented at the preliminary hearing failed to establish a *prima facie* case with respect to

---

[4] *See* 18 Pa.C.S. §§ 901, 2702(a)(1), 907(b), 6105(a)(1), and 6106(a)(1), respectively.

the charges.[5]  **See** Appellant's Omnibus Pretrial Motion, 11/26/18, at 2.  The trial court denied the motion following a hearing on February 19, 2019.[6]

The case proceeded to a jury trial, commencing on May 13, 2019.  On May 15th, the jury returned a verdict of guilty on all charges.  The trial court imposed an aggregate sentence of 28 to 56 years' imprisonment on July 11, 2019.

Appellant filed a timely direct appeal in which he argued:  (1) the trial court abused its discretion when it permitted two corrections officers to testify how they recognized Appellant, *i.e.*, because he had been an inmate; and (2) the evidence was insufficient to positively identify him as the shooter.[7]  **See Commonwealth v. Muhammad**, 1224 WDA 2019 (Pa. Super. Jan. 13, 2021) (unpub. memo. at 3, 5).  This Court affirmed the judgment of sentence, concluding Appellant's first claim was waived, and his second claim was meritless.  **See id.** at 4, 6-7 (affirming the second issue on the basis of the trial court's opinion).  Appellant did not seek review in the Pennsylvania Supreme Court.

_____

[5] Appellant filed a substantially similar amended motion four days later, to which he attached the notes of testimony from the September 17, 2018, preliminary hearing.

[6] In that same order, the court granted Appellant's request for a motion in *limine* precluding the Commonwealth from presenting testimony regarding his character and prior record.  **See** Order, 2/19/19, at 2 (unpaginated).

[7] Emily M. Merski, Esquire, from the Erie County Office of the Public Defender entered her appearance in September of 2019, and represented Appellant in his direct appeal to this Court.

On March 17, 2021, Appellant filed a timely, *pro se* PCRA petition. The PCRA court appointed William J. Hathaway, Esquire, as counsel, and on June 7th, Attorney Hathaway filed a supplemental petition asserting the ineffective assistance of prior counsel for failing to challenge a material misstatement of fact in the arrest warrant — namely, that the surveillance video showed Appellant with a firearm. **See** Appellant's Supplemental Petition for Post Conviction Collateral Relief, 6/7/21, at 1-2. On July 9th, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without first conducting an evidentiary hearing. **See** Notice of Intent to Dismiss PCRA Pursuant to Pa.R.Crim.P. 907, 7/9/21, at 1. The court found that Appellant's claim was previously litigated on direct appeal — where he challenged the sufficiency of the evidence identifying him as the shooter — and Appellant was improperly attempting to "relitigate the issue of identification under the guise of an ineffective assistance of counsel claim." **Id.** at 4-5. The PCRA court further noted that both the preliminary hearing and trial counsel "extensively cross-examined Detective Bogart regarding his investigatory process[,]" including the issue of "the visibility of the firearm in question[.]" **Id.** at 5.

Appellant did not file a response to the Rule 907 notice. Consequently, on August 11, 2021, the PCRA court entered an order dismissing Appellant's petition. This timely appeal follows.[8]

_____

[8] Appellant complied with the PCRA court's order directing him to file a Pa.R.A.P. 1925(b) concise statement of error complained of on appeal. The

Appellant sets forth the following three issues on appeal:

A. Whether the [PCRA] Court committed legal error and abused its discretion in failing to grant PCRA relief in that [A]ppellant was afforded ineffective assistance of counsel given the failure of counsel to challenge the legal sufficiency of the arrest warrant issued in this case due to the arrest warrant being patently defective based on false declarations by the affiant police officer?

B. Whether the [PCRA] Court committed legal error and abused its discretion in failing to find that the affiant knowingly or intentionally or with reckless disregard falsified or exaggerated material facts within his affidavit to secure the issuance of an arrest warrant thereby rendering the initiation of the criminal case and the arrest warrant that was issued as void *ab initio*?

C. Whether [A]ppellant's constitutional rights were violated by defense counsel's omissions and the trial [c]ourt's failure to intercede relative to the defective issuance of the arrest warrant and the resultant extralegal arrest process, which tainted the entire criminal charges in this case from origination?

Appellant's Brief at 2.

Our standard of review of an order denying PCRA review is well-established: "[W]e determine whether the ruling of the PCRA court is supported by the record and is free of legal error." ***Commonwealth v. Webb***, 236 A.3d 1170, 1176 (Pa. Super. 2020). Furthermore, "a PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that

_____

PCRA court subsequently filed a Rule 1925(a) opinion, relying on its Rule 907 notice for its "rationale for dismissing the PCRA[.]" Trial Ct. Op., 10/1/21, at 2.

the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." ***Commonwealth v. Brown***, 161 A.3d 960, 964 (Pa. Super. 2017) (citations omitted).

The crux of Appellant's argument is that the affidavit of probable cause supporting the issuance of his arrest warrant contained a material misrepresentation of fact — namely, that upon viewing the surveillance video footage of the shooting, Detective Bogart observed an individual, later identified as Appellant, **in possession of a firearm**. Appellant's Brief at 6. However, Appellant asserts that, at both the preliminary hearing and jury trial, Detective Bogart "was forced to concede that in viewing the video surveillance tapes he never observed a firearm" in Appellant's possession. ***Id.*** Appellant contends the statement in the probable cause affidavit was "a blatant misrepresentation of what the video surveillance showed[,]" and that the detective "falsified [this] material fact . . . in an effort to falsely link [Appellant] to the alleged criminal conduct." ***Id.***

In his first issue, Appellant argues trial counsel was ineffective for failing to challenge the legality of his arrest warrant, and that he was "severely prejudiced [because] he was deprived of a valid and compelling defense that could have [been] dispositive of the entire criminal case[.]" Appellant's Brief at 9.

Where, as here, a PCRA petitioner challenges prior counsel's ineffectiveness, we must bear in mind the following:

> Pennsylvania law presumes counsel has rendered effective assistance. When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail.

*Commonwealth v. Mullen*, 267 A.3d 507, 512 (Pa. Super. 2021) (citations omitted), *appeal denied*, ___ A.3d ___, 2022 WL 854513 (Pa. Mar. 23, 2022).

It is axiomatic that an arrest warrant must be supported by probable cause.

> There is, of course, no doubt that the issuing authority must have probable cause to believe a suspect guilty of a crime charged against him before issuing a warrant for his arrest. This is ancient law and basic to our concept of freedom. It is embodied in the Fourth Amendment to the United States Constitution. It is reflected in our Rules of Criminal Procedure[.]

*Commonwealth v. Krall*, 304 A.2d 488, 489–90 (Pa. 1973); *see also* Pa.R.Crim.P. 513(B)(2) ("No arrest warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology."). However, the inclusion of a material misrepresentation in a probable cause affidavit invalidates a warrant, "unless probable cause exists notwithstanding any deliberate omissions or misrepresentations of fact." *Commonwealth v. Burno*, 154 A.3d 764, 782 (Pa. 2017).

Here, Appellant's argument is premised upon his assertion that the probable cause affidavit supporting his arrest warrant contained a material misrepresentation of fact. We conclude that it did not.

Appellant focuses on the following statement in the probable cause affidavit: "The suspect walks behind the victim and **appears to remove a firearm from waist area** and one flash can be seen and victim [ ] can be seen immediately falling forward into the roadway[.]" PCA at 1 (unpaginated) (emphasis added). He emphasizes that the affiant, Detective Bogart, conceded — at the preliminary hearing and jury trial — that he did not observe any firearm in the surveillance video.

During his preliminary hearing testimony, Detective Bogart narrated the surveillance footage of the shooting. *See* N.T., 9/17/18, at 8-13.[9] He explained the suspect (Appellant) was identifiable because of the "specific design on the front of his shirt." *Id.* at 10. The detective was able to follow Appellant's movements *via* several surveillance cameras, and described the moments before the shooting:

> [Y]ou'll see [Appellant] come off this concrete here. Looks like – you'll see a flash at that point, and you'll see [Appellant] run off. And drops the victim . . . in the street where they find a pool of blood, and they also locate one nine millimeter shell casing. [Appellant] continues to run off south on Plum.

---

[9] As noted *supra*, the transcript of the September 17, 2018, preliminary hearing is attached to Appellant's amended omnibus pretrial motion filed on November 20, 2018.

*Id.* at 12-13.[10]  On cross-examination, Appellant's counsel asked:  "On the video you can't determine whether the person possesses a firearm, correct?  A firearm is not visible in the video?"  N.T., 9/17/18, at 19.[11]  The detective replied, "Correct, but you do see the flash."  *Id.*

Similarly, at trial, Appellant's counsel questioned Detective Bogart concerning whether a gun was visible on the surveillance video:[12]

> [Trial Counsel:] Detective Bogart, in your sworn affidavit, you stated that [Appellant] appeared to have removed a gun.  Now, looking at this image again, you cannot say that [Appellant] removed a gun.  Correct?
>
> [Detective Bogart:]  Correct.
>
> [Trial Counsel:]  So when you said in your affidavit that [Appellant] removed a gun, that's not accurate.   Yes or no?

---

[10] The transcript indicates that this discussion was in counsel's question, however, it is clear from the context that it was Detective Bogart's statement.

[11] Page 19 is missing from the document attached to Appellant's amended pretrial motion.  Nevertheless, Appellant attached the relevant page as exhibit B to his March 17, 2021, *pro se* PCRA petition.  Neither the PCRA court nor the Commonwealth challenge the authenticity of the document.

[12] The surveillance footage was also played during the jury trial.  It is not included in the certified record for our review.  However, the Commonwealth does not dispute the fact that a firearm is not visible in the footage.  **See** Commonwealths' Brief at 7 (describing events on video as Appellant "snuck up behind [Victim], a gun flashed, and [Victim] slumped to the ground.  The suspect then fled southbound.").

N.T., 5/14/19, at 113. Before answering the question, Detective Bogart asked to review the probable cause affidavit, which the trial court permitted. *Id.* at 113-14. The detective then responded, reading from the affidavit:

> [Detective Bogart:] I have: The subject was behind the victim and appears to remove a firearm from the waist area and there's a flash on scene.
>
> That's in reference to him kind of lifting up his shirt, which you see probably most clear from Camera 3.
>
> [Trial Counsel:] But when he lifts up his shirt, you do not see from any of the videos here, there's no gun visible that you can see. Yes or no?
>
> [Detective Bogart:] Correct. You do not see a firearm.
>
> [Trial Counsel:] You cannot.
>
> [Detective Bogart:] You cannot see a firearm, which is what I have referenced. Yes.

*Id.* at 114.

Upon our review, we conclude there was no material misstatement of fact in the probable cause affidavit. Detective Bogart attested that the surveillance footage showed the suspect (Appellant) walked behind the victim, "**appears** to remove [a] firearm from [his] waist" and "one flash" could be seen, before the victim fell forward. PCA at 1 (unpaginated) (emphasis added). The detective did **not** assert that the footage showed Appellant in possession of a firearm. Rather, as is evident from his testimony, Detective Bogart presumed Appellant possessed a firearm from the manner in which Appellant approached the victim and lifted his shirt, immediately before the gunshot flash could be seen. *See* N.T., 9/17/18, at 19; N.T., 5/14/19, at 113-

14. We review an application for an arrest warrant in a "common sense, nontechnical, ungrudging and positive manner." ***Burno***, 154 A.3d at 781 (citation omitted). Moreover, "the fact [t]hat other inferences could be drawn [from the probable cause affidavit] does not demonstrate that the inference that was drawn by the police and the magistrate was unreasonable." ***Id.*** (citation and quotation marks omitted). Here, Appellant insists the only inference that can be drawn from Detective Bogart's affidavit is that he deliberately and falsely averred that a firearm could be seen in Appellant's possession in the surveillance footage. We disagree. Thus, we conclude the probable cause affidavit did not include a misstatement of fact.

Furthermore, even if the detective's description in the affidavit was a misstatement, Appellant would still be entitled to no relief. First, if prior counsel had raised this claim before the MDJ held the charges for trial, Appellant "could have obtained his discharge from custody[,]"[13] but the Commonwealth could have later revised and refiled the arrest warrant, so long as the statute of limitations had not expired. ***See Commonwealth ex rel. Fitzpatrick v. Mirarchi***, 392 A.2d 1346, 1348 (Pa. 1978) ("[R]e-arrest is the appropriate procedure and the Commonwealth's only recourse where charges are dismissed and the defendant discharged upon a finding of a lack of a *prima facie* case[.]").

_____

[13] ***Krall***, 304 A.2d at 491.

Moreover, Appellant fails to acknowledge that after a defendant is arrested pursuant to a warrant, the Commonwealth must establish a *prima facie* case at a preliminary hearing.[14]

> The principal function of a preliminary hearing is to **protect an individual's right against an unlawful arrest and detention**. . . . At this hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed, and that the accused is **probably** the one who committed it.

***Commonwealth v. Perez***, 249 A.3d 1092, 1102 (Pa. 2021) (citation omitted and some emphasis added). Thus, our Supreme Court has recognized that once an MDJ determines a *prima facie* case has been established at a preliminary hearing, "any issue concerning a defect in the affidavit of probable cause [becomes] moot." ***Commonwealth v. Chamberlain***, 30 A.3d 381, 423 (Pa. 2011), *citing* ***Commonwealth v. Abdul-Salaam***, 678 A.2d 342, 349 (Pa. 1996).

---

[14] We note the case law upon which Appellant relies concerns material misstatements in probable cause affidavits supporting **search** warrants, as opposed to **arrest** warrants. ***See*** Appellant's Brief at 5, 10, *citing* ***Commonwealth v. D'Angelo***, 263 A.2d 441, 443-44 (Pa. 1970); ***Commonwealth v. Tucker***, 384 A.2d 938, 941 (Pa. 1978); ***Commonwealth v. Brown***, 836 A.2d 989, 995-96 (Pa. Super. 2003). He asserts "the ramifications of a false statement leading to the issuance of a search warrant has equal applicability to an affidavit for issuance of an arrest warrant." Appellant's Brief at 11. While Appellant is correct to a certain degree, ***see Burno***, 154 A.3d at 782, following the execution of a search warrant, there is no automatic hearing which tests the underlying basis of the search, like a preliminary hearing tests the underlying basis for the arrest of the accused.

In the present case, Appellant's charges were held for court after a preliminary hearing, during which the MDJ viewed the surveillance footage of the shooting, narrated by Detective Bogart, and heard the detective concede — and could see on the video footage — that no firearm was visible. *See* N.T., 9/17/18, at 8-19. Despite this, the MDJ determined the Commonwealth established a *prima facie* case against Appellant. Appellant again challenged this ruling in his omnibus pretrial motion. In fact, he argued, *inter alia*, "the Commonwealth failed to demonstrate that [he] was in possession of a gun on the aforesaid night; and that [he] discharged a firearm thereby causing injuries to the victim." Appellant's Omnibus Pretrial Motion at 4. Following a hearing, the trial court denied Appellant relief.

Therefore, we conclude Appellant cannot demonstrate his underlying claim has arguable merit because, as recounted above, the affidavit did not include a misstatement of fact. ***See Mullen***, 267 A.3d at 512. Moreover, Appellant has also failed to prove he was prejudiced by prior counsel's failure to challenge the warrant because even after the detective's alleged misstatement was exposed, the MDJ and trial court both concluded the evidence was sufficient to establish a *prima facie* case. ***See Chamberlain***, 30 A.3d at 423. Thus, his ineffectiveness claim fails.

In his second, related claim, Appellant contends the patent error in the probable cause affidavit is "so material and egregious as to render the issuance of the arrest warrant and the criminal case void *ab initio*." Appellant's Brief at 9. He also insists the trial court failed to "comprehend[ ] the nature

- 14 -

and import of the legal claims asserted in the instant PCRA" petition, and issued an opinion "wholly inapposite" to the issue asserted on appeal. *Id.* at 11.

For the same reasons stated above, we conclude the warrant was not void *ab initio*. As explained **supra**, first, we disagree with Appellant's contention that Detective Bogart included a material misstatement in the probable cause affidavit. Moreover, even without the mention of a firearm, the evidence in the affidavit was sufficient to support a finding of probable cause, as is evident from the MDJ's ruling at the preliminary hearing, and the trial court's denial of his pretrial motion. Accordingly, Appellant's second issue similarly fails.[15]

Lastly, with respect to Appellant's third claim, which asserts a violation of his constitutional rights, we note he provides no argument on the issue.[16]

_____

[15] To the extent Appellant argues the PCRA court's opinion is unresponsive to the issue raised on appeal, we agree. **See** Appellant's Brief at 11. Indeed, the PCRA court insists Appellant's claim is simply an attempt to relitigate the identification issue which this Court rejected on direct appeal. **See** Notice of Intent to Dismiss PCRA Pursuant to Pa.R.Crim.P. 907, at 5. However, the PCRA court failed to recognize that Appellant's present claim concerns prior counsel's failure to challenge the arrest warrant. While both issues focus on the identification of Appellant as the shooter, they are distinct. Nevertheless, while we agree the PCRA court misperceived Appellant's claim on appeal — as we do not find it was previously litigated — we may affirm the decision of a PCRA court denying relief if it is correct on any basis. **Commonwealth v. Beatty**, 207 A.3d 957, 964 (Pa. Super. 2019)

[16] Appellant's only reference in his brief to a **constitutional** violation is the following statement: "Defense counsel was ineffective in failing to preserve and present a constitutional violation to challenge the efficacy of the affidavit

Our Supreme Court has stated: "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (citation omitted). ***See also*** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have . . . such discussion and citation of authorities as are deemed pertinent."). Thus, Appellant's third claim is waived for our review.

Because we agree with the determination of the PCRA court that Appellant is not entitled to collateral relief, we affirm the order on appeal.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2022

---

of probable cause which had the prospect of leading to the summary dismissal of the criminal charges." Appellant's Brief at 10. This single, conclusory sentence does not preserve Appellant's claim on appeal.